In re John T. DeCONCILIS, Cheryl A. DeConcilis, Debtors.

John T. DeCONCILIS, Cheryl A. DeConcilis, Plaintiffs,

v.

John P. CRAWLEY, Joseph N. Cassiere, Defendants.

Bankruptcy No. 89–10653.
Adv. No. 89–1095.

United States Bankruptcy Court,
D. Rhode Island.

Sept. 4, 1990.

John Rao, R.I. Legal Services, Inc., Wakefield, R.I., for debtors/plaintiffs.

John M. Verdecchia, Greenville, R.I., for defendant John P. Crawley.

John DeSimone, Providence, R.I., for defendant Joseph N. Cassiere.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on August 16, 1990 on the debtors' Motion for Sanctions against defendants, Joseph Cassiere and John Crawley, for their failure to comply with rules of court and court ordered discovery deadlines. After oral argument, we directed the defendants to show cause why a default judgment should not enter, and ordered the submission of written memoranda within two weeks.

Upon consideration of the entire record in this proceeding, the arguments presented at the August 15 hearing, and the written submissions, we conclude that this clearly is an appropriate instance for the entry of a default judgment.

■ The travel of this adversary proceeding, including the persistent, but frustrated efforts by the plaintiffs to obtain discovery, is well documented in their memorandum dated September 4, 1990, which we find is thoroughly accurate and fairly describes the pre-trial activity to date. The defendants have not refuted any of the plaintiffs' statements, nor are they able to present any contrary version of the relevant facts. Therefore, we adopt and incorporate herein by reference the plaintiffs' written argument, in its entirety, and include it as Exhibit A to this opinion.

Bankruptcy Rule 7037, entitled "Failure to Make Discovery: Sanctions", adopts in

full FED.R.CIV.P. 37, which provides, in relevant part, that:

> (b) Failure to Comply with Order
>
> ....
>
> (2) Sanctions by Court in Which Action is Pending.
>
> If a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> ....
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

FED.R.CIV.P. 37(b)(2)(C).

As plaintiffs have pointed out, this provision has been approved by the First Circuit on a number of occasions. *See Spiller v. U.S.V. Laboratories, Inc.*, 842 F.2d 535 (1st Cir.1988); *Farm Const. Services, Inc. v. Fudge*, 831 F.2d 18 (1st Cir.1987); *Damiani v. Rhode Island Hospital*, 704 F.2d 12 (1st Cir.1983); and *Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410 (1st Cir.1981), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Although in each of the above-cited cases the sanction imposed was to dismiss the pending complaint, we see no reason, based on the defendants' contemptuous behavior throughout this adversary proceeding, why the entry of a default judgment against them should be treated differently, especially where it is specifically authorized under FED.R.CIV.P. 37(b)(2)(C).

In addition, we rely on the teachings of the First Circuit that "[t]here is nothing in the rule that states or suggests that the sanction of dismissal can be used only after all the other sanctions have been considered or tried", *Damiani, supra* at 15, or that "[a] court [is] required to provide an adversary hearing before imposing this sanction." *Farm Const. Services, Inc., supra* at 20 (citing *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)).

The foregoing references are not, however, to suggest that our ruling herein is made without adequate appreciation of the harshness of this sanction. In fact, it is only our protracted over-indulgence of these defendants, that has allowed them to go unpunished for so long. Ultimately though, the day arrives when such a severe sanction is not only warranted, but is demanded. "[H]ere, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Damiani, supra* at 15.

The record before us is replete with glaring examples of both the defendants' and their counsels' outrageous conduct and intentional obstruction of the plaintiffs' attempts to obtain discovery which was first requested in December, 1989, nine months ago. To say that we merely disagree with defendants' counsels' contention that their conduct has not been willful, vastly understates the matter. Rather, we find that their repeated, willful indifference to all procedural, court imposed, and agreed upon discovery deadlines was done knowingly and in bad faith. "[B]ased on the foot-dragging evident from the record, it is difficult to draw any other inference but that plaintiff did not intend to comply unless absolutely forced to do so." *Spiller, supra* at 537.

The weak excuses offered by the defendants[1] for noncompliance do nothing to lessen the dilemma in which they now find

---

1. Counsels' cavalier reference to vacation plans as one of their reasons for failing to provide discovery, after repeatedly missing prior deadlines, only reinforces our conviction that these defendants, and their counsel, were acting in intentional disregard of their obligations as litigants and officers of the Court.

themselves, and their acknowledgment that perhaps, with hindsight, they should have filed motions to extend time, adds little merit to their opposition to sanctions. Particularly incomprehensible is the defendants' indignation, from the outset, over even having to defend against the plaintiffs' claims, and their insistence on an expedited trial, so that they could put "this meritless claim" behind them. To then unilaterally take it upon themselves to determine when a trial meets *their* convenience, as well as to set their own discovery timetable, with no deference to the rights of the plaintiffs, or the increasingly crowded calendar of the court, constitutes behavior warranting the imposition of a default judgment. *See Damiani, supra* at 16 ("Not only was there willful disobedience of the court's order, but the plaintiff's attorney arrogated control of discovery to himself and changed the date of compliance to suit his own convenience and that of his client.", . . ., "[t]he entire pattern of behavior by plaintiff's counsel casts a shadow on the bona fides of his client's case, . . . . *Id.* at 16).

We agree completely with, and adopt the proposition that "[t]he day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expeditiously if trials are to be held at all." *Damiani, supra* at 16.

Accordingly, based upon all of the foregoing, we ORDER the entry of a default judgment against defendants Cassiere and Crawley in the above entitled adversary proceeding. The plaintiffs' request for attorneys' fees is GRANTED, and runs against the parties and their counsel, jointly and severally. Based upon the time records[2] submitted by Mr. Rao as an attachment to his memorandum, attorney's fees in the amount of $2500 are awarded to cover the extra services required as a result of the conduct of the defendants and their attorneys as described above.

Enter Judgment accordingly.

---

2. We have deducted 6.1 hours from the total of 27.4, since that amount of time would have been

APPENDIX

EXHIBIT A

PLAINTIFFS' MEMORANDUM OF LAW FILED IN RESPONSE TO ORDER TO SHOW CAUSE WHY A DEFAULT JUDGEMENT OR OTHER SANCTIONS SHOULD NOT BE ENTERED AGAINST DEFENDANTS

## I. INTRODUCTION

On August 16, 1990, the plaintiffs, John and Cheryl DeConcilis, moved this Court for an order imposing sanctions against the defendants for their failure to comply with discovery orders. After hearing oral arguments on the motion for sanctions, this Court issued from the bench an Order to Show Cause why a default judgement or other sanctions should not be entered against the defendants.

The parties were also afforded an opportunity to submit Memoranda. This Memorandum is filed by the plaintiffs in support of the imposition of sanctions.

## II. FACTS

On November 22, 1989, the plaintiffs filed this adversary proceeding against defendants Crawley and Cassiere. Shortly after the complaint was filed, the plaintiffs began discovery. On December 11, 1989, both defendants were served with Requests to Produce Documents. On December 13, 1990, defendant Crawley was served with a set of Interrogatories. On December 14, 1990, a set of Interrogatories was served upon defendant Cassiere.

Prior to the filing of these discovery requests, at a hearing before this Court on November 27, 1989, defendant Cassiere, who is a practicing attorney, requested that this adversary proceeding be scheduled for trial as soon as possible because of a pending Supreme Court Disciplinary Board complaint filed against him by the plaintiffs. Mr. Cassiere, who had been representing himself and defendant Crawley up to that

---

required to do discovery, even had the defendants acted reasonably.

point, also stated that he and defendant Crawley would be retaining new counsel. In addition, Mr. Cassiere represented to the Court that he would comply with any discovery requests within a two week period. As a result of these representations, this Court initially scheduled a trial in this matter for January 10, 1990.

In serving the Requests to Produce Documents on the defendants on December 11, 1989, plaintiffs' counsel enclosed a cover letter confirming that compliance was expected by December 27, 1989, since defendants had agreed to comply within a two week period. (Copies of these letters are attached hereto and marked as Exhibits A and B.) Plaintiffs' counsel also requested in the letter that defendants should contact him as soon as possible if they were unable to comply with the discovery requests by December 27, 1989.

On January 2, 1990, a pre-trial conference was held. Despite defendant Cassiere's representations that he would retain counsel, defendant Cassiere appeared again representing himself. Defendant Crawley did retain new counsel, John Verdecchia, who attended the conference. During the conference, the Court was advised by plaintiff's counsel that defendants had not responded to the outstanding discovery requests and that plaintiffs could not therefore proceed with a trial on January 10, 1990.

In response, defendant Cassiere assured the Court that defendants would promptly comply with the outstanding discovery. Defendant Cassiere also reiterated his interest in having the matter brought to trial as soon as possible. Accordingly, the Court postponed the January 10 trial and indicated that a new trial date would be set by telephone conference when discovery was completed.

On March 1, 1990, the Court sent a notice to all parties stating that a status conference would be held on March 22, 1990. As of March 22, 1990, defendants still had not provided any responses or objections to the outstanding discovery, nor had defendants sought an extension of time from the Court. On March 22, 1990, plaintiffs' counsel appeared at the 2:00 p.m. status conference and was informed by Deputy Clerk Lucinda Cory that Mr. Cassiere had sent his secretary to the conference to inform the Court that defendants would not be attending the conference because one of their attorneys was on trial in Superior Court and the other attorney was ill. Although this information must have been available to defendant's counsel well in advance of the scheduled conference, no one from Mr. Cassiere or Mr. Verdecchia's office notified plaintiff's counsel or the Court prior to 2:00 p.m. on that date that they would not be attending the conference. (Since plaintiff's counsel's office was then located in Woonsocket, Rhode Island, he was greatly inconvenienced by the lack of advance notice.)

Although the status conference was not held on March 22, 1990, plaintiffs' counsel informed the Court through Ms. Cory that defendants had not yet complied with the outstanding discovery. In response, the Court requested that plaintiff's counsel submit an Order setting a new status conference date for April 12, 1990 and requiring defendants to comply with all outstanding discovery by that date. This Order was entered by the Court on March 29, 1990.

By April 12, 1990, defendant Cassiere had retained attorney John DeSimone to represent him in this matter. Both Mr. DeSimone and Mr. Verdecchia appeared at the April 12, 1990 status conference and finally produced the outstanding discovery responses, some three months after the thirty-day period prescribed by Bankruptcy Rules 33(a) and 34(b).

Since the responses were hand-delivered to plaintiff's counsel at the status conference, plaintiff's counsel advised the Court that he had not had an opportunity to review the responses. He further indicated, however, that his cursory review of the responses suggested that there had not been adequate compliance by defendants and motions to compel further responses would probably need to be filed. The Court continued the status conference until June 21, 1990.

On June 12, 1990, plaintiffs filed a Motion to Compel defendant Crawley to produce documents identified in Requests Nos. 14 and 15 of the original Request for Production. (Although the Motion erroneously listed Requests Nos. 12, 15, 16, 17, 18 and 19, the Memorandum filed in support of the Motion made clear that plaintiffs sought to compel production of only those documents in Requests Nos. 14 and 15.)

Request No. 14 sought checks or bank drafts showing any payments or transfers of funds made by defendant Crawley to defendant Cassiere during the relevant years 1987 through 1989. Request No. 15 sought production of documents evidencing loans or mortgages made or negotiated by defendant Crawley during 1987 through 1989. In responding to Requests Nos. 14 and 15, defendant Crawley objected to the Request on the grounds that they were "not relevant, onerous and burdensome" and an "attempt to intrude in the personal affairs" of the defendant.

On June 12, 1990, a Motion to Compel defendant Cassiere to produce the documents referred to in Requests Nos. 12, 15, 16, 17 18 and 19 was also filed. These Requests generally sought documents relating to the transfer of the loan proceeds from the lender, defendant Crawley, to the loan closing agent, defendant Cassiere, as well as documents evidencing other business transactions between the defendants. These Requests also sought documents concerning defendant Cassiere's activities in making or negotiating loans and mortgages during the years in question. In response, defendant Cassiere claimed that the Requests were "not relevant, onerous and burdensome," and were an "attempt to intrude in the personal business affairs" of the defendant.

At the continued status conference held on June 21, 1990, plaintiffs also served upon each of the defendants a Motion to Compel answers to interrogatories. Specifically, the Motion filed against defendant Crawley sought answers to Interrogatories Nos. 7 through 12, 15, 16 and 17 and the Motion filed against defendant Cassiere sought answers to Interrogatories Nos. 7 through 12, 16 and 17. These Interrogatories requested information similar to that sought in the Requests for Production.

During the June 21st status conference, plaintiff's counsel argued that the Motions to Compel should be granted. In response to the Court's question about why the discovery was needed, plaintiff's counsel stated that the claims against defendants brought under the Rhode Island Secondary Mortgage Act, and the Federal Truth in Lending Act, require the plaintiff to show that defendants made or negotiated loans and mortgages in the regular course of business. Thus, it was argued that information concerning defendants' other loan business activities was clearly relevant.

Also, other claims against defendants are based on plaintiffs' contention that they actually received only $6,500 from the $16,000 that the defendants claimed had been borrowed. Since all of the loan proceeds were disbursed in cash, plaintiffs sought in discovery any documents, including bank statements, which would show that the $16,000 actually existed and was transferred from the lender, defendant Crawley, to the closing agent, defendant Cassiere.

Although defendants' counsel suggested at the conference that the information sought was not relevant, the Court concluded that plaintiffs were entitled to the information and indicated that the Court was inclined to grant the Motions to Compel. The Court then asked the defendants' counsel if they wished to have the Motions scheduled for a hearing. Given the Court's suggestion that the discovery sought was relevant, plaintiffs' counsel agreed that the Motions to Compel should be treated as granted and stated that they would comply with the contested discovery requests.

At the close of the conference, defendants' counsel again urged the Court to schedule the case for trial as their clients were still seeking a quick resolution. The Court then suggested a trial date of August 15, 1990. Based upon the representations made by defendants' counsel that they would promptly provide the additional

discovery responses, plaintiffs' counsel did not object to the August 15th trial date.

On June 22, 1990, the Motions to Compel production of documents were granted by the Court. A copy of the Motions marked "granted" was sent to the parties by the Clerk on June 26, 1990.

On June 27, 1990, plaintiffs' counsel sent a letter to defendants' counsel urging them to fully cooperate with discovery in light of the accelerated trial schedule. (A copy of the letter is attached as Exhibit C.) In the letter, plaintiffs' counsel stated that he expected the defendants to comply with the outstanding discovery as soon as possible. Plaintiffs' counsel concluded the letter by stating that if he did not receive the outstanding discovery by July 6, 1990, he would request a hearing with the Court.

On July 2, 1990, plaintiffs' counsel received a response from Janet Pezzullo, an attorney who apparently works with attorney Verdecchia. (A copy of the letter is attached as Exhibit D.) Attorney Pezzullo stated that since Mr. Verdecchia had left for a vacation on June 27, 1990, and would not return until July 10, 1990, he would not be able to comply with the discovery by July 6, 1990. Attorney Pezzullo also stated that defendant Cassiere was on vacation at the same time as Mr. Verdecchia and that therefore his attorney, Mr. DeSimone, would also not be able to comply by July 6, 1990. In conclusion, attorney Pezzullo stated that she would "bring all of these matters to their respective attentions on July 10, 1990 and have them contact you immediately thereafter."

As a result of the representations made by attorney Pezzullo, plaintiffs' counsel did not request a hearing or conference with the Court after July 6, 1990, but instead waited to be contacted "immediately" after July 10, 1990.

By July 18, 1990, plaintiffs' counsel had not been contacted by either Mr. Verdecchia or Mr. DeSimone. Rather than wait any longer to be contacted, plaintiffs' counsel called Mr. DeSimone on July 18, 1990, and questioned why defendants had still not complied with the outstanding discovery or at least contacted the plaintiffs' counsel to explain the delay. Mr. DeSimone stated that he was surprised that his client had not yet produced the additional discovery and that he would call defendant Cassiere to determine what was causing the delay.

Despite this conversation, neither Mr. DeSimone or Mr. Verdecchia contacted plaintiffs' counsel. Thus, on July 30, 1990, plaintiffs' counsel called Deputy Clerk Cory and requested a conference with the Court. Ms. Cory stated that a conference would be scheduled for August 2, 1990, at 2:00 p.m.

After speaking with Ms. Cory, plaintiffs' counsel notified Mr. DeSimone in a telephone conversation about the scheduled conference. Mr. DeSimone again indicated that he was surprised that Mr. Cassiere has not yet produced the outstanding discovery and stated that he would get back to plaintiff's counsel with an explanation.

Although plaintiffs' counsel was unable to contact Mr. Verdecchia on July 30, 1990, he did speak with him on July 31, 1990. During that conversation, Mr. Verdecchia advised plaintiff's counsel that the outstanding discovery would be produced the next day, on August 1, 1990. Plaintiffs' counsel replied that he intended to proceed with the conference, even if the discovery is received, unless defendants were willing to request that the Court cancel the August 15th trial date. Mr. Verdecchia then said that he would check with Mr. DeSimone and would advise plaintiffs' counsel if they could agree to a new trial date.

By August 2, 1990 plaintiffs' counsel still had not received the outstanding discovery. Nevertheless, on the morning of August 2, 1990, Mr. Verdecchia called plaintiffs' counsel and assured him that the discovery had been completed and that it would be mailed the next day. Mr. Verdecchia also stated that defendants would agree to a new trial date.

In reliance upon these representations, plaintiffs' counsel informed Deputy Clerk Cory that if the Court would permit the trial date to be rescheduled, the conference could be cancelled. Accordingly, the con-

ference was not held on August 2, 1990. (The Court also provided a new trial date for October 3, 1990.)

By August 8, 1990, plaintiffs' counsel had not received the discovery. This Motion for Sanctions was thus filed on that date and a hearing was scheduled for August 16, 1990.

At the hearing, defendants' counsel stated that they did have the supplemental discovery responses with them and that they would give the responses to plaintiffs' counsel at the conclusion of the hearing. When questioned by the Court about whether the responses were complete, Mr. Verdecchia stated that the responses were essentially complete but that there might be a few documents which had not yet been produced.

After the hearing, defendants' counsel handed the discovery responses to plaintiffs' counsel. As will be discussed below, defendants still have not complied with the original discovery requests as their supplemental responses are incomplete and evasive.

## III. ARGUMENT

### A. *A Default Judgment Is An Appropriate Sanction for Defendants' Failure to Comply with Discovery*

Federal Rule of Civil Procedure 37(b)(2)(C), adopted in whole as Bankruptcy Rule 7037, provides that a Court in which an action is pending may enter a default judgement against a party who fails to obey an order to permit discovery. It is a well-settled principle in cases decided by the First Circuit that the entry of a default judgment by a trial judge for failure to comply with a discovery order is an appropriate sanction which should be used to both punish the offender and provide a deterrent to others. See *Spiller v. U.S.V. Laboratories, Inc.*, 842 F.2d 535 (1st Cir. 1988); *Farm Const. Services, Inc. v. Fudge*, 831 F.2d 18 (1st Cir.1987); *Damiani v. Rhode Island Hospital*, 704 F.2d 12 (1st Cir.1983); *Corchado v. Puerto Rico Marine Management, Inc.*, 665 F.2d 410

(1st Cir.1981). In fact, the First Circuit stated in its *Damiani* decision that from 1964 until the date of the decision (1983), the First Circuit had upheld dismissals in all cases but one. *Damiani v. Rhode Island Hospital*, 704 F.2d 12, 17.

Even though Federal Rule of Civil Procedure 37(b)(2) provides for several different types of sanctions, the First Circuit has clearly stated that a trial judge need not consider or try a less severe form of sanction before ordering a dismissal. *Damiani v. Rhode Island Hospital, supra*, 704 F.2d at 15.

As the *Damiani* court suggested, the United States Supreme Court decision in *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) was a "turning point" in the law on the use of dismissal as a discovery sanction. *Damiani, supra*, 704 F.2d at 15. In *National Hockey League*, the Supreme Court embraced the notion that deference is a factor which may be considered in ordering the sanction of dismissal:

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that these respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.

*Id.* at 642–43, 97 S.Ct. at 2780–81.

The facts of this case implore the application of the lesson enunciated in *National Hockey League*. Over the course of nine months, defendants flagrantly refused to cooperate with the discovery process. They wilfully disregarded discovery rules

and openly ignored orders of this Court. At no time during this nine month period did defendants file any motions for an extension of time to comply, any affidavits or other evidence providing an explanation for their inability to comply, or any objections reciting in detail the grounds for their objections. (The objections contained in defendants' original discovery responses did not comply with Local Rule 13(b)(3) of the District Court of Rhode Island, as adopted by this Court, in that the objections were not "set forth on a paper separate from the answers or responses" and did not "recite in detail the grounds thereof.") Defendants' written objections to the Motions to Compel also did not provide any details on the grounds for objection and were filed without Memoranda.

In addition to defendants' direct defiance of rules and orders of this Court, defendants' counsels' actions in this case have been contrary to the notions of fair play that have become accepted in litigation and exhibit a complete lack of concern for the interests of opposing counsel. At an early stage in this litigation, defendants failed to appear at a pre-trial conference and did not even bother to notify plaintiffs' counsel or the court in advance. Defendants' lack of communication, however, is perhaps best shown by their failure to contact plaintiffs' counsel upon their return from vacation on July 10, 1990, even though attorney Pezzullo had assured plaintiffs' counsel that he would be contacted immediately after July 10, 1990.

Defendants' cavalier attitude towards this case is also shown by their repeated promises to comply with discovery, even though the promises were never kept. (In retrospect, plaintiffs' counsel may have been too indulgent to defendants, as recently evidenced by his willingness to cancel the August 2nd conference in reliance upon defendants' assurances that the additional discovery would be produced.)

The most pernicious aspect of defendants' behavior in this action, however, is that they have persistently called upon this Court to impose an expedited trial schedule while, at the same time, engaged in inexcusable delay with regard to discovery. This one-sided approach to litigation should not be tolerated by this Court.

At the hearing on the Motion for Sanctions held on August 16, 1990, defendants' counsel attempted to imply that their failure to comply was not willful. This contention should be rejected outright by this Court. As the First Circuit has stated, where the record in a case is replete with "foot dragging", as in the present case, "it is difficult to draw any other inference but that plaintiff did not intend to comply unless absolutely forced to do so." *Spiller v. U.S.V. Laboratories, Inc., supra,* 842 F.2d 535, 537. This is particularly true in this case where one of the defendants is knowledgeable of the discovery process since he is an attorney.

Defendants also made a feeble attempt to provide excuses for their lack of compliance at the August 16th hearing. One of the excuses offered was that attorney DeSimone had only recently entered his appearance in the case as attorney for defendant Cassiere. (Plaintiffs' counsel recalls that Mr. DeSimone claimed at the hearing that he entered his appearance on June 21, 1990). A review of the record shows that Mr. DeSimone signed his name as attorney for defendant Cassiere on the original Response for the Request for Production which was dated April 12, 1990. Thus, Mr. DeSimone had entered his appearance in this case at the time defendants' initial discovery responses were filed, which was also long before the Motions to Compel were filed by plaintiffs.

Another excuse provided by attorney Verdecchia was that his client, defendant Crawley, had recently suffered a "personal tragedy." However, attorney Verdecchia never filed a request for an extension of time based on this matter. Furthermore, attorney Verdecchia provided few details about Mr. Crawley's tragedy and no affidavits or other evidence were submitted. Even if the Court were to sympathize with Mr. Crawley at his time of misfortune, this should not excuse his behavior for the many months that passed without compli-

ance. Also, Mr. Crawley's situation does not in any way excuse the behavior of defendant Cassiere.

Defendants also stated that they had difficulty complying with the outstanding discovery because the requests were burdensome and required the production of numerous documents which were difficult to compile. This argument is completely spurious as shown by the Supplemental Responses produced by defendants at the August 16th hearing.

Defendant Crawley's Supplemental Response for Requests for Production consisted of *four documents* in total. These documents were merely copies of mortgages he most likely had available to him since this action was filed. Defendant Cassiere's Supplemental Response to Request for Production consisted of one bank deposit slip, several checks which had already been produced, and a set of documents which were contained in a client file he had maintained on Mr. DeConcilis. Thus, most of the documents produced came from a file located in defendant Cassiere's office and were available from the instant this case was commenced. The only document produced which even remotely required any difficulty in obtaining was the bank deposit slip.

Without doubt, the most ludicrous excuse made by defendants' counsel was that their vacation schedules conflicted with their ability to produce the discovery. Given the substantial amount of time defendants had to comply with discovery during the course of this case, the Court quickly rejected this explanation for the delay at the August 16th hearings.

Defendants may argue that they should not be sanctioned because no orders containing specific compliance dates were entered by the Court after the Motions to Compel had been granted. This argument should be dismissed since defendants were well aware that time was of the essence given their request for an expedited trial schedule. Plaintiffs' counsel had also made it known to defendants' counsel that he expected compliance by at least July 6, 1990, in order to prepare for the trial then scheduled for August 15, 1990.

In addition, Local Rule 13(c)(2) of the District Court of Rhode Island, as adopted by this Court pursuant to Local Rule 3, provides that when "an objection to an interrogatory or request to produce is overruled, the interrogatory or request shall be answered or complied with within 20 days from the order overruling the objection or such other time as the Court orders." In this case, since the Motions to Compel production of documents were granted by this Court on June 26, 1990, thereby overruling defendants' objections to production, defendants were required under Local Rule 13(c)(2) to comply with the request by at least July 16, 1990, even though the order granting the Motions did not specify a compliance date.

In light of defendants' overall conduct in this case, this Court should impose the sanction of dismissal. As the First Circuit has stated, such behavior should be punished, as it was in the *Damiani* case:

> Not only was there willful disobedience of the court's order, but the plaintiff's attorney arrogated control of discovery to himself and changed the date of compliance to suit his own convenience and that of his client. If such conduct were condoned by a slap on the wrist the District Court of Rhode Island might well find the lawyers calling the tune on discovery schedules. There is no claim that such conduct was accepted practice in the District Court of Rhode Island or had been tacitly sanctioned by the court in other cases.

> . . . . .

> The day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience. The processing of cases must proceed expeditiously if trials are to be held at all.

*Damiani, supra,* 704 F.2d at 16.

Moreover, the sanction of dismissal is clearly appropriate in this case since defendants have still not complied with discovery. For example, Request for Produc-

tion No. 14 served upon defendant Crawley sought all checks or bank drafts made payable to defendant Cassiere from defendant Crawley during 1987 through 1989. At a status conference, Crawley's attorney stated that responding to this request would take some time since there had been many business transactions between the defendants. In his Supplemental Response, defendant Crawley stated that "no such items exist as all of the sums transferred to Cassiere for these loans were transferred in cash." Plaintiffs' request made clear that it was not limited to the loan transactions in question.

With regard to Request No. 15, plaintiff sought all documents evidencing mortgages or loans made or negotiated by defendant Crawley during 1987 through 1989. In his Supplemental Response, defendant Crawley produced documents "only as to loans made by Crawley as lender where he was not holding paper pursuant to a sale of property." Again, it was clear that the Request was not limited in the way Crawley elected to answer the Request. It is definitely too late in this litigation for defendants to be providing evasive responses.

These are but two examples of the continuing noncompliance by defendants. If this Court does not grant a Sanction of Dismissal, plaintiffs' counsel will need to file yet another Motion to Compel in this unending battle to obtain discovery.

### B. *Sanctions Under Rule 37(b)(2)(A) Are Also Appropriate*

If this Court decides that the sanction of dismissal should not be imposed in this case, plaintiffs urge the Court to impose sanctions under Rule 37(b)(2)(A). This section provides that a Court may order that any "designated facts shall be taken to be established for the purposes of the action ..."

This form of sanction was recently affirmed by the First Circuit in a case originating from the District of Rhode Island. *Fashion House Inc. v. K Mart Corp*, 892 F.2d 1076 (1st Cir.1989). As with the sanction of dismissal, the Court rejected the argument that Rule 37(b)(2)(A) sanctions are too severe:

> Here, the disease was virulent and the medicine correspondingly strong. If trial courts are disabled from combating serious, deliberate discovery abuses by measures which, albeit severe, reasonably fit the crime, then the inmates will be left in charge of the institution. The judiciary is not so impuissant.

*Id.* at 1082.

In the event that this Court deems this form of sanction to be appropriate, plaintiff requests that the following facts be designated as proven for the purposes of this action:

1. Defendant Crawley made and negotiated more than six (6) second mortgage loans, as that term is defined in RIGL § 19–25.2–1, in the calendar years 1987 through 1989.

2. Defendant Cassiere made and negotiated more than six (6) second mortgage loans, as that term is defined in RIGL § 19–25.2–2, in the calendar years 1987 through 1989.

3. The mortgage loans which are the subject of the instant action were made to plaintiffs by defendants in the regular course of business.

4. The mortgage loans which are the subject of the instant action are "secondary mortgage loans" as that term is defined by RIGL § 19–25.2–1.

5. Defendants Crawley and Cassiere are "creditors" within the meaning of the Federal Truth in Lending Act 15 U.S.C. § 1602, and Regulation Z, 12 C.F.R. § 226.2(a)(17)(i).

6. The mortgage loans which are the subject of the instant action are "consumer credit transactions" within the meaning of the Federal Truth in Lending Act and Regulations Z, 12 C.F.R. § 226.2(a)(12).

7. The defendants advanced only $4,000 to the plaintiffs, rather than the $11,000 referred to in the promissory notes and mortgages dated September 21, 1989 and December 20, 1989, resulting in an interest charge in excess of $7,000.00.

8. The defendants advanced only $2,500 to the plaintiffs, rather than the $5,000 referred to in the promissory note and mortgage dated January 20, 1989, resulting in an interest charge in excess of $2,500.

C. *Plaintiffs Should be Compensated for Defendants Failure to Comply with Discovery.*

In addition to any other sanctions this Court deems appropriate, the plaintiffs urge this Court to award them attorney's fees for the work spent by plaintiffs' counsel in attempting to conduct discovery. At the request of the Court, plaintiffs' attorney has attached complete time records which show the time spent by him on discovery.

It should not matter in this case that plaintiffs are represented by Rhode Island Legal Services, Inc. It is well established that fees should neither be denied nor reduced simply because the debtor was represented by public interest attorneys without a fee. *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54 [100 S.Ct. 2024, 64 L.Ed.2d 723] (1980); *Palmigiano v. Garrahy,* 616 F.2d 598 (1st Cir.1980); *In re Hagan,* 44 B.R. 59 (Bankr.R.I.1984).

IV. CONCLUSION

For the reasons set forth above, plaintiffs request that this Court impose the sanction of dismissal in this case. In the alternative, this Court should deem the facts listed above as proven for the purposes of this action. Finally, plaintiff requests an award of attorney's fees for the work expended in conducting discovery.

Respectfully Submitted,
JOHN T. DeCONCILIS
CHERYL A. DeCONCILIS
By Their Attorney:

/s/ John Rao

John Rao, Attorney at Law
R.I. Legal Services, Inc.
63 Columbia Street
Wakefield, RI 02879
(401) 789-9895

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a copy of the foregoing Memorandum was mailed on the 4th day of September, 1990, to John DeSimone, Esq., 996 Smith Street, Providence, RI 02908, John M. Verdecchia, Esq., at Post Office Box 800, Greenville, RI 02828, and to John Boyajian, Trustee, 182 Waterman Street, Providence, R.I. 02906.

[Signature]

EXHIBIT A

**RHODE ISLAND LEGAL SERVICES, INC.**
STADIUM BUILDING, ROOM 202
MONUMENT SQUARE
WOONSOCKET, RHODE ISLAND 02895

———

TELEPHONE (401) 765-7900

December 11, 1989

Mr. John P. Crawley
2 Briarwood Drive
North Providence, RI 02911

Re: DeConcilis v. Crawley
 BK No: 89-10653, A.P. No: 89-1095

Dear Mr. Crawley:

I am enclosing a Request to Produce Documents directed to
you as defendant in the above-entitled matter. This is a formal
request for you to provide me, as attorney for John and Cheryl
DeConcilis, with documents relating to the above-entitled case.
At the request of Mr. Cassiere, this case has been put on an
accelerated schedule, and a trial is to take place on January 10,
1989. Thus, I have requested that you produce the documents by
December 27, 1989. If you cannot comply by that date, I would
appreciate it if you or your attorney call me as soon as
possible.

Also, if you have retained an attorney to represent you in
this case, I would appreciate it if you would ask him or her to
give me a call.

Very truly yours,

John Rao
Attorney at Law

JR/ca
Encl.
cc: Joseph N. Cassiere, Esq.

R109DECO.LTR

EXHIBIT B

RHODE ISLAND LEGAL SERVICES, INC.
STADIUM BUILDING, ROOM 202
MONUMENT SQUARE
WOONSOCKET, RHODE ISLAND 02895

TELEPHONE (401) 765-7900

December 11, 1989

Joseph N. Cassiere, Esq.
P.O. Box 800
466 Putnam Pike
Greenville, RI 02828

Re: DeConcilis v. Crawley
 BK No: 89-10653, A.P. No: 89-1095

Dear Mr. Cassiere:

 I am enclosing a Request to Produce Documents directed to you as defendant in the above-entitled matter. In accordance with your representations to the Court that you would comply with this discovery request within two weeks, I have requested that production be made by December 27, 1989. If you are unable to comply by that date, I would appreciate it if you would contact me as soon as possible.

 I am also enclosing a copy of a Request to Produce Documents directed to defendant John Crawley. Since you indicated that Mr. Crawley will be obtaining other counsel, I have sent the original Request to him directly.

 Finally, I would appreciate it if you would let me know who will be representing you in this matter.

 Very truly yours,

 John Rao
 Attorney at Law

JR/ca
Encl(s)
cc: John P. Crawley

R108DECO.LTR

EXHIBIT C

**RHODE ISLAND LEGAL SERVICES, INC.**
63 COLUMBIA STREET
WAKEFIELD, RHODE ISLAND 02879

TELEPHONE (401) 789-9895
TOLL FREE 1-800-637-4529

June 27, 1990

John DeSimone, Esq.
996 Smith Street
Providence, RI 02908

John M. Verdecchia, Esq.
PO Box 800
Greenville, RI 02808

RE: <u>DeConcilis vs Crawley AP #89-1095</u>

Dear Messrs DeSimone and Verdecchia:

As we discussed at the pre-trial conference, I would appreciate it if you would provide me with several dates when your clients can be available for depositions. I did not object to scheduling this case for trial on August 15, 1990 because I assumed that the depositions could be completed by July 20, 1990. Thus, if your clients cannot be available for depositions during the second week of July, then I suggest that we schedule the depositions for July 16, 1990 or July 17, 1990.

Also, you agreed at the pre-trial conference to respond to the outstanding discovery request without a hearing on my Motions to Compel. Since the trial in this case is now fast approaching, I would appreciate it if you would comply with the outstanding discovery as soon as possible. If I do not receive the discovery by July 6, 1990, I will request that the court schedule a hearing.

Thank you for your cooperation.

Very truly yours,

John Rao
Attorney at Law

894

EXHIBIT D

*JOHN M. VERDECCHIA, ESQUIRE*
*Attorney at Law*
*466 Putnam Plaza, Suite 9*
*P.O. Box 800*
*Greenville, Rhode Island 02828*
*(401) 949-2949*

June 29, 1990

John Rao, Esquire
63 Columbia Street
Wakefield, Rhode Island 02879

Re: DeConcilis vs. Crawley, et al

Dear Mr. Rao:

I am writing to you with regard to the letter you forwarded to Attorney Verdecchia on June 27, 1990. In it, you requested that the additional documentary materials which are apparently to be forwarded to you from the Defendants in the above matter be forwarded to you by July 6, 1990 or you would seek a court hearing relative to same. Unfortunately, Mr. Verdecchia left for a vacation in Alaska on June 27, 1990 and will not be returning until Tuesday, July 10, 1990 and, thus, it will not be possible for him to respond to your request until he returns.

I also note that you are requesting Attorney DeSimone to provide addional documents from Attorney Cassiere by the same date of July 6, 1990. Unfortunately, Mr. Cassiere also went on vacation on June 29, 1990 and will also return on July 10, 1990. It would seem that this precludes a response from Attorney DeSimone until at least that date.

You should also note that the entire office will be closed from June 30, 1990 through July 9, 1990 and there will be no one at all in the office during that time period. Thus, it is not possible to schedule the depositions of Attorney Cassiere and Mr. Crawley until Mr. Verdecchia and Mr. Cassiere return from there vacations and the office is re-opened. However, I can assure you that I will bring all of these matters to their respective attentions on July 10, 1990 and have them contact you immediately thereafter.

Yours truly,

*Janet M. Pezzullo*
Janet M. Pezzullo, Esquire

JMP:dk

JUL 2 - 1990

## AFFIDAVIT OF COUNSEL

I, John Rao, being duly sworn, do depose and state that:

1. This affidavit is submitted at the request of the Court in connection with plaintiffs' Motion for Discovery Sanctions against the defendants.

2. I have been the plaintiffs/debtor's attorney of record throughout this bankruptcy and adversary proceeding and present this affidavit based on my own knowledge.

3. I have kept contemporaneous time records of my work since the initial filing of this adversary proceeding because several of the claims brought against defendants include requests for attorney's fees.

4. I have attached to this affidavit the time records which relate solely to my work in attempting to conduct discovery.

(s) John Rao
John Rao, Attorney at Law

Subscribed and Sworn before me in the city of Providence, State of Rhode Island, on the 4th day of September 1990.

(s) Carolyn J. Daly
NOTARY PUBLIC

My Commission Expires On:
June 30, 1991

## TIME RECORDS—JOHN RAO
RELATING TO PRE-TRIAL DISCOVERY

DeCONCILIS V CRAWLEY. et al, A.P. No. 89–1095

| | | |
|---|---|---|
| 12/08/90 | 1.2 hrs. | Drafting of Request to Produce Documents directed to defendant Crawley |
| 12/11/89 | 1.6 hrs. | Drafting of Request to Produce Documents directed to defendant Cassiere |
| 12/11/89 | .4 hr. | Drafting of letters to Cassiere and Crawley concerning discovery |
| 12/13/89 | 1.7 hrs. | Drafting of Interrogatories directed to Crawley |
| 12/14/89 | 1.2 hrs. | Drafting of Interrogatories directed to Cassiere |
| 03/22/90 | 1.6 hrs. | Attendance at pre-trial conference including travel from Woonsocket; defendants did not appear |
| 03/23/90 | .4 hr. | Draft order re: rescheduling of conference and discovery deadlines |
| 04/11/90 | .4 hr. | Preliminary research on sanctions for failure to comply with discovery |
| 04/12/90 | 1.0 hrs. | Attendance at status conference |
| 06/12/90 | 2.5 hrs. | Drafting of Motions to Compel production of documents and accompanying Memoranda |
| 06/20/90 | 2.3 hrs. | Drafting of Motions to Compel answers to interrogatories and accompanying Memoranda |
| 06/21/90 | 1.0 hrs. | Attendance at status conference |
| 06/27/90 | .2 hr. | Drafting of letter to attorneys Verdecchia and DeSimone concerning compliance with discovery |

| 07/02/90 | .1 hr. | Review of letter from attorney Pezullo |
|---|---|---|
| 07/18/90 | .1 hr. | Telephone call to attorney DeSimone concerning discovery |
| 07/30/90 | .3 hr. | Telephone call to Clerk requesting conference; call to attorney DeSimone to notify about conference; several calls to attorney Verdecchia (no answer) |
| 07/31/90 | .1 hr. | Telephone call to attorney Verdecchia concerning discovery and conference |
| 08/02/90 | .2 hr. | Telephone call from attorney Verdecchia; call to clerk to suggest cancellation of conference |
| 08/08/90 | .1 hr. | Telephone call to clerk to request date for hearing on Motion for Sanctions |
| 08/08/90 | 1.0 hr. | Drafting of Motion for Sanctions and accompanying Memorandum |
| 08/12/90 | 1.2 hrs. | Attendance at hearing on Motion for Sanctions |
| 08/28/90 | 1.3 hrs. | Research on First Circuit decisions concerning Rule 37(b) sanctions |
| 08/29/90 | 1.5 hrs. | Drafting of Memorandum on Order to Show Cause |
| 08/30/90 | 2.5 hrs. | Drafting of Memorandum on Order to Show Cause |
| 08/31/90 | 3.0 hrs. | Final drafting and editing of Memorandum on Order to Show Cause |
| 08/31/90 | .5 hr. | Drafting of Affidavit and compilation of time records |
| Total | 27.4 hrs. | |